UNITED STATES v. BRENDEL et al.

(Circuit Court of Appeals, Second Circuit. February 22, 1905.)

No. 120.

1. CUSTOMS DUTIES—COLLECTORS—LIABILITY FOR MONEY LOST IN TRANSMISSION.

Under Rev. St. § 3639 [U. S. Comp. St. 1901, p. 2422], which requires all collectors of customs to retain the sums collected till the same are ordered by the proper department or officer transferred or paid out, and to then make the transfer or payment as directed, and the regulations of the Treasury Department made pursuant thereto, requiring collectors to deposit customs dues collected with the Treasurer or an Assistant Treasurer, using therefor a designated express company and forms of vouchers and waybills provided by the department, a collector who has followed such directions in making up a package, and in taking the receipt for the same from the express company, cannot be held liable on his bond for the loss of any part of the contents of such package before it reaches the Assistant Treasurer, to whom it is properly addressed.

2. ERROR—ADMISSION OF INCOMPETENT EVIDENCE—HARMLESS ERROR.

The admission of incompetent evidence is not ground for the reversal of a judgment which is fully supported by uncontradicted evidence properly admitted.

In Error to the District Court of the United States for the Western District of New York.

This cause comes here upon writ of error to review a judgment of the District Court which dismissed the complaint of the plaintiff below upon the verdict of a jury that there was no cause of action.

Chas. H. Brown, for the United States.

Frank W. Standart, for defendants in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The action was brought against the principal and surety upon a bond to indemnify the United States against any loss it might sustain by or through any act or omission of defendant Brendel as collector of customs for the district of Buffalo Creek, in the state of New York. The only item in controversy was a shortage of $5,250 in a remittance of customs duties purporting to contain $7,700. The testimony introduced by the defendants showed that on September 7, 1901, a package of United States bills and currency amounting to $7,700 was made

136 F.—47

up in the collector's office, wrapped in manilla paper, properly sealed, and addressed to the "Assistant Treasurer U. S., N. Y.," and that it was on the same day delivered to the United States Express Company at Buffalo, which issued the following receipt therefor; the italicized parts being in writing, and the remainder of the receipt a printed form:

"No. 61.                                    *Buffalo N. Y. Sept. 7, 1901.*

"Received, in good order, from *Henry W. Brendel*, Collector of Customs one sealed package, *said to contain Seven Thousand seven hundred* Dollars, to be transported under the existing contract between the United States Express Company and the Secretary of the Treasury; and to be delivered to *Assistant Treasurer U. S. N. Y.*                    *Morgan*
                              "Agent for U. S. Express Company.
"The above receipt will be retained by the Consignor.

"Received for the above Certificate of Deposit No. ——— dated ——— 190–, which I have forwarded with my accounts to the Treasury Department, Washington."

Diagonally across the face of the receipt are printed the words, "Inclose in each package a letter of advice indicating how the money is to be deposited."

The package was transmitted to the Assistant Treasurer, and it is claimed that when it reached his office it contained only $2,450.

The court charged the jury that if they believed that a theft was committed in the Buffalo office, or if the money was lost because of the neglect of Brendel or those in his employ, they should find a verdict for the amount claimed in the complaint, but that if they believed that this money was carefully placed in the bundle, and delivered to the office of the United States Express Company at Buffalo for transmission to the subtreasury at New York City, they should find a verdict for the defendants.

The counsel for the government contends that theft or loss during transmission without his fault could not relieve Brendel from the obligation actually to deposit the money in the treasury, or with an Assistant Treasurer or a United States depository; also that, even if it were conceded that he might make use of an express company to forward the money, he failed to carry out his instructions when he took from the express company a receipt for a "sealed package said to contain" the sum specified. In support of these propositions, reliance is had on sections 3617, 3621, Rev. St. [U. S. Comp. St. 1901, pp. 2413, 2416]. The first of these sections provides that:

"The gross amount of all moneys received from whatever source for the use of the United States * * * shall be paid by the officer or agent receiving the same into the treasury, at as early a day as practicable."

Section 3621 provides that:

"Every person who shall have moneys of the United States in his hands or possession shall pay the same to the Treasurer, an Assistant Treasurer, or some public depository of the United States, and take his receipt for the same in duplicate and forward one of them forthwith to the Secretary of the Treasury."

It is suggested that there was a "public depository of the United States" in the city of Buffalo, and that, under the section last

above quoted, it was Brendel's duty to place the money there and take duplicate receipts. The difficulty with this argument is that the language of section 3621 is general. Undoubtedly it covers every person not otherwise provided for, but it cannot apply to public officers as to whom Congress has specifically provided some other and different method of disposing of moneys of the United States which may come to their hands. Section 3639, Rev. St. [U. S. Comp. St. 1901, p. 2422], which is not cited in the briefs of either side, is controlling of the question raised here. It reads:

"Sec. 3639. * * * All collectors of the customs * * * are required to keep safely, without loaning, using, depositing in banks, or exchanging for other funds than as specially allowed by law, all the public money collected by them * * * till the same is ordered by the proper department or officer of the government, to be transferred or paid out; and when such orders for transfer or payment are received, faithfully and promptly to make the same as directed, and to do and perform all other duties as fiscal agents of the government which may be imposed by any law, or by any regulation of the Treasury Department made in conformity to law."

The general treasury regulations as to customs provide:

"Art. 1582. All sums received for customs duties shall be deposited with the Treasurer or such Assistant Treasurer of the United States as may be designated in each case; but receipts for tonnage, official fees, and other dues and charges, and the moneys received for disbursement may be deposited in the national bank depositories specially designated for such purpose.

"Whenever the nearest depositories are too remote to admit of daily deposits, collectors will deposit their receipts of duties as often as they amount to $1,000, and at least once a month, even if less than that sum be collected.

"All such moneys shall be transmitted to the place of deposit in such manner and by such routes as may be prescribed from time to time, the charges for transportation being paid by the Secretary of the Treasury."

It will be perceived that this regulation requires customs dues to be deposited with the Treasurer or an Assistant Treasurer. It is not disputed that the proper Assistant Treasurer was the one in New York City. In furtherance of the last paragraph of the regulation above quoted, the Secretary of the Treasury on March 12, 1889, issued the following circular:

"To All Collectors, Officers, or Agents of the Treasury Department Engaged Either in the Collection or Transfer of the Revenue of the United States."

No subsequent modification of its provisions is suggested. It provides as follows:

"You are hereby notified that the contract between the United States and the Adams Express Company for the transportation of public moneys and securities, dated Feb. 1, 1879, will terminate March 31, 1889, and that a contract has been entered into to take effect March 31, 1889, between the Government and the United States Express Company for the transportation over the lines of the said United States Express Company * * * of all moneys under the control of the Treasury Department.

"You are, therefore, hereby directed to employ said companies for the necessary transportation of all moneys and securities of the Treasury Department; said means of transportation being provided for the purpose of depositing with the Treasurer, an Assistant Treasurer, or National Bank Depository of the United States moneys collected on account of sales of public lands, internal revenue, or customs, * * * and for special purposes and under special circumstances in accordance with instructions from the Department. * * * Forms of vouchers and waybills, to be used by all United States

officers and express companies or their agents, in the transportation of moneys or securities under this contract, have been prepared by the Treasury Department, and their use to the exclusion of all others is imperatively enjoined. They are furnished in book form by the Secretary of the Treasury, on whom requisition for them should be made. * * * All officers and agents are cautioned to carefully count and pack their money * * * to be transported, securing in strong packages, sealed with their own private seals in at least four places, and with the amount of each kind of money, their own names and titles, and the names and titles of the consignees plainly marked on the wrapper, taking receipts in the established forms from the express companies for all sums transferred."

No question is raised here as to the form of package, sealing, marking, etc.

The regulation and the circular above set forth are such as the Secretary of the Treasury was authorized to make and issue under section 251, Rev. St. U. S. [U. S. Comp. St. 1901, p. 138], and are not inconsistent with any provision of law to which our attention has been called. The objections to their admission in evidence (their authentication being conceded) are unsound. They made it the duty of the collector to transmit the money to the Assistant Treasurer by the United States Express Company, and in such transmission to use the forms of voucher and waybills prepared by the Treasury Department. The form of receipt which is objected to by plaintiff is the one issued to the defendant by the department, and he cannot be held in fault because it uses the phrase "a sealed package, said to contain," provided that when such package was delivered to the express company it was made up in conformity to the requirements of the department, and did in fact contain the $7,700.

The only other assignments of error which need be considered are such as challenge the competence of certain testimony given by one Moran, chief clerk of the secret service division, Treasury Department. Against objection, he was allowed to testify to conversations which he had with certain clerks in the subtreasury in New York as to the circumstances under which the package received from Buffalo was received, opened, and examined. It was hearsay and should have been excluded, but we are satisfied that the error was not harmful to the plaintiff, because, if all such testimony had been excluded, the record was one on which the defendant was entitled to the direction of a verdict in his favor. Two witnesses testified specifically and positively to counting the money, putting it up in a package with the proper wrapper, etc., and that it contained $7,700. This testimony was uncontradicted. If it had been shown on behalf of the government that at some time it had been discovered by somebody that the package did not contain $7,700, that would be a circumstance from which it might be argued that these two witnesses were mistaken or untruthful, and there would have been an issue of fact which should have gone to the jury. But no such proof was given, and the plaintiff rested on the certification under section 886, Rev. St. U. S. [U. S. Comp. St. 1901, p. 670], that Brendel's account with the Treasury Department showed a balance due the United States of $5,250. This left

the testimony of the Buffalo clerks as to the package in controversy uncontradicted, and the defendant entitled to a verdict. Under these circumstances, it seems unnecessary to reverse the judgment because some additional evidence, improperly admitted, was persuasive to the same result.

The judgment is affirmed.